**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

WILLIE PEARSON                                                                              PLAINTIFF

V.                                5:13CV00304-JJV

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Willie Pearson, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.  BACKGROUND**

On May 10, 2011, Mr. Pearson protectively filed for DIB and SSI benefits due to vision and back problems, head injury and depression. (Tr. 146) Mr. Pearson's claims were denied initially and upon reconsideration. At Mr. Pearson's request, an Administrative Law Judge ("ALJ") held a hearing on January 26, 2012, where Mr. Pearson appeared with his lawyer. At the hearing, the ALJ heard testimony from Mr. Pearson and a vocational expert ("VE"). (Tr. 43-62)

The ALJ issued a decision on March 8, 2012, finding that Mr. Pearson was not disabled under the Act. (Tr. 20-30) The Appeals Council denied Mr. Pearson's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Pearson, who was fifty-six years old at the time of the hearing, has a GED and past relevant work experience as a poultry hanger. (Tr. 46, 59)

1

**II.     DECISION OF THE ADMINISTRATIVE LAW JUDGE**[1]

The ALJ found that Mr. Pearson had not engaged in substantial gainful activity since March 15, 2008, and he had the following severe impairments: lumbago, chronic bronchitis, adjustment disorder with depressed mood, and history of head injury.  (Tr. 23)  However, the ALJ found that Mr. Pearson did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 23)

According to the ALJ, Mr. Pearson has the residual functional capacity ("RFC") to do medium work, but he could not be exposed to respiratory irritants.  He is limited to work where the complexity of tasks can be learned by demonstration or repetition within one month; interaction with public is incidental to the work performed, with little judgment and few variables; and supervision required is simple, direct, and concrete.  (Tr. 25)  The VE testified that the jobs available with these limitations were kitchen helper and stocker.  (Tr. 59)  Accordingly, the ALJ determined that Mr. Pearson could perform a significant number of other jobs existing in the national economy, and found that he was not disabled.

**III.    ANALYSIS**

    **A.     Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

substantial evidence in the record as a whole to support the decision.[3]  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

### B.   Mr. Pearson's Arguments for Reversal

Mr. Pearson asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence.  Specifically, Mr. Pearson contends that the ALJ (1) failed to properly weigh his doctor's medical source statement, and (2) without explanation, relied on testimony from the VE that contradicts the *Dictionary of Occupational Titles.*  (Doc. No. 15)

#### 1.   Medical Source Statement

Mr. Pearson argues that the ALJ's decision to give the treating physician's January 23, 2012, RFC "limited weight" was in error.  He argues that the ALJ's analysis "was woefully deficient" because the ALJ provided only "bullet points of 'factors'" and "provided no substance whatsoever to support his finding."  (*Id.*)

An ALJ can discount a treating physician's opinion when it is inconsistent with the record as a whole, just as the ALJ did here.[6]  Dr. Marcus's report indicated that he had seen Mr. Pearson

---

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

[6]*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (holding that an ALJ may discount or even disregard the opinions of a treating physician, when they are inconsistent or where other medical assessments are better supported).

only twice in ten months, and "prescription medicine was not required or requested" for his back pain. (Tr. 300) Yet, Dr. Marcus concluded that Mr. Pearson could walk only two blocks without pain and could stand for only thirty minutes. He noted that Mr. Pearson could stand/walk for only a total of two hours in an eight hour workday and could rarely pick up less than ten pounds. (Tr. 301-302) These extreme limitations conflict with both Mr. Pearson's testimony and the medical records as whole. A few examples:

**Activities of Daily Living** -- Mr. Person's own testimony contradicts the limitations set out by Dr. Marcus. He testified that he has no trouble walking, no trouble sitting, and can pick up twenty pounds. (Tr. 47-48) When asked how long he could stand, Mr. Pearson's response was "I really don't stand that often." (Tr. 48) Additionally, he indicated that he could shop, do yard work, and take care of his personal needs, though it takes him longer than normal. (Tr. 156-158)

**Conservative Treatment** -- As set out in Dr. Marcus's report and the other evidence, Mr. Pearson takes only over the counter medications for his back problems and headaches.[7] When he met with Dr. Navarro in March 2011, he advised he had "been having back pain for the last fifteen years" but he lets it get better on his own, rather than take medication. (Tr. 224) At that time, Mr. Pearson alleged that he had financial restraints, but he was and is a smoker, so this excuse carries little weight.[8] Additionally, an x-ray of his spine revealed no bony abnormalities. (Tr. 238). Finally,

---

[7]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[8]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

Mr. Pearson only saw Dr. Marcus twice in ten months.[9]

**Working with Impairments**[10] -- Mr. Pearson's headaches and back problems started after he was assaulted in 1999, so he worked with those impairments for nearly ten years -- he was fired from his job in March 2008. (Tr. 204) Additionally, Dr. Butler's 2009 assessment found that Mr. Pearson had headaches and back pain, but the severity was minimal. (Tr. 208)

    2.    VE Testimony

Mr. Pearson points out that the ALJ found he could not be "exposed to respiratory irritants" but then found him capable of being a kitchen helper, which is a job that may expose workers to "other environmental conditions." (Doc. No. 15) Even assuming that the occupation of kitchen helper contradicted the RFC set out by the ALJ, the error is harmless since the VE also testified that Mr. Pearson could work as a stocker.

**IV.    CONCLUSION**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Mr. Pearson's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 18th day of September, 2014.

                                    JOE J. VOLPE
                                    UNITED STATES MAGISTRATE JUDGE

---

[9] *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

[10] *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability.").